UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

United States of America,

   Plaintiff,

 vs.

Dennis Edward Pietrantonio,

   Defendant.   Crim. No. 08-170 (MJD/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.  Introduction

  This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendant's Motion to Dismiss Indictment.   A Hearing on the Defendant's Motions was conducted on June 25, 2008, at which time, the Defendant appeared personally, and by Douglas Olson, Assistant Federal Defender, and the Government appeared by Kimberly A. Svendsen, Assistant United States Attorney.

For reasons which follow, we recommend that the Defendant's Motion to Dismiss the Indictment be denied.[1]

## II. Factual and Procedural Background

The Defendant is charged with one (1) Count of Failing to Register as a Sex Offender, in violation of Title 18 U.S.C. §2250(a). The alleged violation is said to have occurred from on or about September 14, 2007, through on or about April 15, 2008, in this State and District. According to the Indictment, see, Docket No. 10, the Defendant is required to register, under the Sex Offender Registration and Notification Act ("SORNA" or the "Act"), as a sex offender, by reason of a conviction under Federal law, and he knowingly failed to update his registration while traveling in interstate commerce, in violation of SORNA. As pertinent to those charges, and to the Motions now before us, the operative facts may be briefly summarized.[2]

---

[1]At the close of the Hearing, the parties requested leave to submit post-Hearing memoranda on the legal issues raised by the Defendant's Motion. Leave was granted, and therefore, the last submission on the issues was received on July 2, 2008, at which time, the Motion was taken under advisement. See, Title 18 U.S.C. §3161(h) (1)(F) and (J); Henderson v. United States, 476 U.S. 321, 330-32 (1986); United States v. Blankenship, 67 F.3d 673, 676-77 (8th Cir. 1995).

[2]No testimony, or other evidence, was proffered at the Hearing. Accordingly, we rely upon the parties' memoranda, as well as the Complaint, see, Docket No. 1, including the attached Affidavit of Matthew Thomas Moran, who is a Deputy United
(continued...)

In November of 2004, the Defendant was convicted, in a Minnesota State Court, of felony Solicitation of Children to Engage in Sexual Conduct, in violation of Minnesota Statutes Section 609.352, Subdivision 2, and of misdemeanor Indecent Exposure, in violation of Minnesota Statutes Section 617.23, Subdivision 1. See, Affidavit of Matthew Thomas Moran ("Moran Aff."), Docket No. 1, at ¶7; Government's Memorandum in Opposition, Docket No. 32, at 1-2; Defendant's Memorandum in Support, Docket No. 29, at 1. He received a stayed sentence of eighteen (18) months of imprisonment, and three (3) years of supervised probation, for his Solicitation conviction, plus a sentence of ninety (90) days of imprisonment for his Indecent Exposure conviction. Id.; Defendant's Memorandum in Support, supra at 1.

---

[2](...continued)
States Marshal, in order to outline the pertinent facts.

Rule 12(e), Federal Rules of Criminal Procedure, provides that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record." As augmented by our recitation of factual findings in our "Discussion," the essential factual findings, that are required by the Recommendations we make, are contained in this segment of our Opinion. Of course, these factual findings are preliminary in nature, are confined solely to the Motions before the Court, and are subject to such future modification as the subsequent development of the facts and law may require. See, United States v. Moore, 936 F.2d 287, 288-89 (6th Cir. 1991), cert. denied, 505 U.S. 1228 (1992); United States v. Prieto-Villa, 910 F.2d 601, 610 (9th Cir. 1990).

The Defendant also duly registered as a sex offender in Hibbing, Minnesota, on November 10, 2004, through his probation agent, in accordance with Minnesota Statutes Section 243.166, Subdivision 1b(2). Id. at ¶10; Government's Memorandum in Opposition, supra at 2; Defendant's Memorandum in Support, supra at 1. The Defendant also acknowledged, in writing, his obligation to maintain registration, for a period of ten (10) years. Id. On November 9, 2005, the Defendant renewed his registration, and again acknowledged, in writing, his obligation to maintain registration. Id. at ¶11. The Defendant also acknowledged, in writing, his obligation to report any change in address to his probation officer, as well as his obligation to report to the law enforcement authority in any new jurisdiction. Id.

On December 15, 2006, the Defendant's probation was revoked, and his sentence was executed. See, Government's Memorandum in Opposition, supra at 2; Defendant's Memorandum in Support, supra at 1-2. On July 17, 2007, the Defendant was released from prison, and he returned to Hibbing, see, Defendant's Memorandum in Support, supra at 2, however, he was unable to obtain housing, and instead, he lived out of his car. Id. Accordingly, the Defendant registered as "homeless," and began checking in regularly with the Hibbing Police Department. Id.; Government's Memorandum in Opposition, supra at 3. On August 6, 2007, the Defendant checked

in with the Hibbing Police Department for the last time and, on August 31, 2007, the Hibbing police were unable to locate the Defendant at his registered homeless location.  See, Moran Aff., supra at ¶9.

The Defendant was no longer in Hibbing, because he had moved to Las Vegas, Nevada, in late August, or early September of 2007, with his daughter.  Id. at ¶13; Defendant's Memorandum in Support, supra at 2.  On September 14, 2007, the Defendant completed the necessary paperwork, in order to register as a sex offender in Las Vegas.  Id.; Defendant's Memorandum in Support, supra at 2.  However, when a verification letter was sent to his Las Vegas address, the letter was returned as undeliverable.  Id.  Accordingly, on October 29, 2007, the Nevada Sex Offender Registry categorized the Defendant as a non-compliant offender.  Id.

In the early part of 2008, the Defendant moved to Massachusetts, so as to obtain medical treatment.  Id. at ¶14; Defendant's Memorandum in Support, supra at 2.  The Defendant did not register as a sex offender, nor did he attempt to register, while residing in Massachusetts.  Id. at ¶16.  On April 15, 2008, the Defendant was arrested at his daughter-in-law's apartment in Brighton, Massachusetts, pursuant to a Warrant issued from the State of Minnesota.  Id. at ¶15; Defendant's Memorandum in Support, supra at 2.

III.  <u>Discussion</u>

<u>The Defendant's Motion to Dismiss Indictment</u>.

The Defendant argues that the Indictment should be dismissed for the following reasons:  a) the Indictment is impermissibly vague; b) it is unconstitutional because it deprives the Defendant of his right to substantive and procedural Due Process; c) it is unconstitutional in that Congress holds no authority to regulate the conduct in question; d) it rests upon an impermissible delegation of authority to the Attorney General, and constitutes a violation of the Administrative Procedures Act; e) it is unconstitutional because it restricts the Defendant's right to travel; and f) it violates the Ex Post Facto clause.  We address each contention in turn.

A.    <u>The Sufficiency of the Indictment</u>.

1.    <u>Standard of Review</u>.  Rule 12(b), Federal Rules of Criminal Procedure, allows our consideration, at the pretrial stage, of any defense "which is capable of determination without the trial of the general issue."  To withstand a Motion to Dismiss, an Indictment must allege that the defendant performed acts which, if proven, would constitute a violation of the law under which he has been charged.  See, <u>United States v. Polychron</u>, 841 F.2d 833, 834 (8th Cir. 1988), cert. denied, 488 U.S. 851 (1988).  As a result, if the acts, which are alleged in the

Indictment, do not constitute a criminal offense, then the Indictment should be dismissed.  See, e.g., United States v. Coia, 719 F.2d 1120, 1123 (11th Cir. 1983), cert. denied, 466 U.S. 973 (1984).

In reviewing the sufficiency of an Indictment, or of any of its Counts, we are to determine whether the Indictment sufficiently sets forth the elements of the offenses alleged, in order to place the defendant on fair notice of the charges against him, and to enable him to raise an acquittal, or conviction, so as to prevent his double jeopardy for a single offense.  See, Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Hernandez, 299 F.3d 984, 992 (8th Cir. 2002), cert. denied, 537 U.S. 1134 (2003); United States v. Fleming, 8 F.3d 1264, 1265 (8th Cir. 1993).

When determining whether an Indictment has sufficiently set forth the elements of the offense charged, the Indictment will generally be deemed sufficient "'unless no reasonable construction can be said to charge the offense.'"  United States v. Morris, 18 F.3d 562, 568 (8th Cir. 1994), quoting United States v. Peterson, 867 F.2d 1110, 1114 (8th Cir. 1989); United States v. Fleming, supra at 1265.  In making that assessment, "[a]n indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true."  United States v. Hall, 20 F.3d 1084, 1087 (10th Cir. 1994), citing United States v. Sampson, 371 U.S. 75, 78-

79 (1962); see also, United States v. Barker Steel Co., Inc., 985 F.2d 1123, 1125 (1st Cir. 1993); United States v. Cadillac Overall Supply Co., 568 F.2d 1078, 1082 (5th Cir. 1978), cert. denied, 437 U.S. 903 (1978).

Ordinarily, the Court's assessment is limited to the "four corners" of the Indictment, and the Court should studiously avoid the consideration of evidence from sources beyond the Indictment. See, United States v. Hall, supra at 1087. However, it is permissible, and even desirable in certain circumstances, for the Court to examine the factual predicates of an Indictment, particularly where material facts are undisputed, in order to ascertain whether the elements of the criminal charge can be shown. Id.; United States v. Brown, 925 F.2d 1301, 1304 (10th Cir. 1991).

    2.    Legal Analysis.  The Indictment contains only one (1) Count, which charges the Defendant with violating Title 18 U.S.C. §2250(a), which provides as follows:

        Whoever --

        (1)    is required to register under [SORNA];

        (2)    (A)    is a sex offender as defined for the purposes of [SORNA] by reason of a conviction under Federal law[,] * * * Indian tribal law, or the law of any territory or possession of the United States; or

- 8 -

> (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
>
> (3) knowingly fails to register or update a registration as required by [SORNA];
>
> shall be fined under the title or imprisoned not more than 10 years, or both.

Title 18 U.S.C. §2250(a).

According to the Defendant, the Indictment is unconstitutionally vague for, in its one Count, it fails to identify when and where he failed to update his registration.

In support of his argument, that we should dismiss the Indictment for vagueness, the Defendant cites Russell v. United States, 369 U.S. 749 (1962). In Russell, Indictments were brought against several individuals under Title 2 U.S.C. §192, which prohibits witnesses, who are called to testify before Congressional Committees, from refusing to answer any question under inquiry. Id. at 752 n. 2. However, the Indictments, which were returned by the Grand Jury, did not identify the subject of the Congressional inquiry, and did not allow the Grand Jury to determine if the defendants had violated Section 192, or had exercised, instead, their right, under that statute, to refuse to answer questions that were not pertinent to the matter under

inquiry.  As a consequence, the Supreme Court concluded that the Indictments had to be quashed.  Id. at 766.

The Defendant urges us to follow the example of Russell, and to find that the allegation in the Indictment, that he "traveled in interstate commerce" between September 14, 2007, and April 15, 2008, and, during that time period, failed to update his registration as a sex offender, is unconstitutionally vague.  Specifically, the Defendant claims that, the Indictment spans a period of eight (8) months, and implicates three (3) jurisdictions, and therefore, he is unable to ascertain the specific date, and the specific jurisdiction, which form the bases for the charge against him.

In United States v. Resendiz-Ponce, 549 U.S. 102, 127 S.Ct. 782 (2007), the Supreme Court revisited its holding in Russell, and explained that, while some crimes, such as those prosecuted under Section 192, must be charged with specificity, a finding of guilt under other statutes does not "depen[d] so crucially upon such a specific identification of fact."  Id. at 789, quoting Russell v. United States, supra at 764.  Moreover, the Court noted that the promulgation of the Federal Rules of Criminal Procedure had removed the need to include detailed allegations in a criminal Indictment, and consequently, in most cases, general allegations in an Indictment satisfy the requirements of Due Process.  See, Rule 7(c)(1), Federal Rules of Criminal

Procedure (stating that an Indictment "shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged").  Id.

The Government disagrees with the Defendant's contention that the Indictment is unconstitutionally vague, and argues that the Defendant's conduct satisfies the elements of Section 2250(a)(2)(B), since he traveled in interstate commerce, see, Moran Aff., supra at ¶17, and that allegation, alone, provides the Defendant with adequate notice of the crime with which he is being charged.  See, United States v. Templeton, 2007 WL 445481 at *3 (W.D. Okla., February 7, 2007)(holding that an Indictment was sufficient where it "fail[ed] to specify which subsection of SORNA defendant's conviction allegedly meets.").

The Government further contends that the Defendant was continuously in violation of SORNA, from the time he moved to Las Vegas, no later than September 14, 2007, until he was arrested in Massachusetts, on April 15, 2008.  See, Government's Memorandum in Opposition, supra at 8-9.  As noted by the Government, in United States v. Ambert, 2007 WL 2949476 at *3 (N.D. Fla., October 10, 2007), the Court was presented with a nearly identical claim of unconstitutional vagueness when the Indictment, in that case, alleged that the defendant had violated SORNA registration requirements during a six (6) month period.  The Court found

that the Indictment was sufficient, as it "properly state[d] the elements of the offense and a time period in which the offense occurred," and therefore, provided the defendant with adequate notice to prepare his defense.  Id.

Moreover, as our Court of Appeals has observed, the use of "on or about in an indictment relieves the government of proving that the crime charged occurred on a specific date, so long as it occurred within a reasonable time of the date specified," United States v. Morris, supra at 568, quoting United States v. Duke, 940 F.2d 1113, 1120 (8th Cir. 1991), and United States v. Turner, 189 F.3d 712, 722 (8th Cir. 1999), and "[t]ime is not a material element of a criminal offense unless made so by the statute creating it."  United States v. Youngman, 481 F.3d 1015, 1019 (8th Cir. 2007), citing United States v. Stuckey, 220 F.3d 976, 982 (8th Cir. 2000).

Here, we find that the Indictment states the essential elements of the crime, and specifically charges the Defendant with failing to update his registration, as a sex offender, beginning on or about September 14, 2007, despite traveling in interstate commerce, through April 15, 2008, and despite the fact that he had an obligation to do so under Section 2250(a)(2)(B).[3]  As a consequence, the Defendant has been placed

---

[3]Although there is a split among the District Courts as to whether a SORNA violation is a continuing offense, see, United States v. Ditomasso, --- F. Supp. 2d ---, (continued...)

on notice of the time span, during which he is accused of violating SORNA, and

presumably, he personally knows any changes in his residence, which occurred during

that time span, and can plan his defenses accordingly.  Therefore, we recommend that

the Defendant's Motion to Dismiss the Indictment for vagueness be denied.

       B.   <u>Substantive and Procedural Due Process</u>.  The Defendant next argues that

SORNA violates his right to substantive and procedural Due Process.  Specifically,

the Defendant claims that he did not receive any notice of SORNA, or its

requirements, and that, even if he had known about those requirements, he could not

have complied with them, as SORNA has not been implemented by Minnesota, or any

other jurisdiction.  We address each contention in turn.

       The Defendant first argues that he did not receive notice of the SORNA

registration requirements, and that Section 2250(a)(3) requires that he **knowingly** fail

---

[3](...continued)
2008 WL 1994866 at *6 n. 5 (D.R.I., May 8, 2008)(collecting cases), those Courts
that have found that it is not have done so in circumstances where the defendant
moved to a jurisdiction, and failed to register prior to the enactment of SORNA,
and/or the Attorney General's promulgation of the Interim Order on February 28,
2007.  In contrast, here, as addressed in further detail in our discussion of the
Defendant's Ex Post Facto Clause claim, the SORNA violation, with which the
Defendant is charged, is for traveling in interstate commerce after the enactment of
both SORNA, and the Interim Order, and therefore, we need not resolve the issue of
whether SORNA is a continuing offense.

"to register or update a registration as required by SORNA" in order to violate the statute. The Defendant does acknowledge that he was convicted, in 2004, for Solicitation and Indecent Exposure, and was sentenced to a term of eighteen (18) months in custody, and three (3) years of probation, and that, following his release from custody, he registered as a convicted sex offender, and acknowledged his duty to register "in accordance with Minnesota Statute Section 243.166." Defendant's Memorandum, supra at 1-2; see also, Moran Aff., supra at ¶¶10-11. However, he claims that he should not be subject to prosecution under Section 2250(a), as he was never specifically advised of his need to register under SORNA. Many Courts have been presented with, and have rejected, the same argument. See, United States v. Holt, 2008 WL 1776495 at *2 (S.D. Iowa, April 18, 2008)(collecting cases).

Although Title 42 U.S.C. §16917 requires the Government to inform a sex offender, who is subject to SORNA, of the reporting and registration requirements, either before he is released from custody, or immediately after his sentencing for the offense giving rise to the duty to register, the Court, in United States v. Holt, supra, noted that the Government did not contend that the defendant ever received such notice, but found that knowledge of the need to register, and the successful completion of registration under State law, provided sufficient notice that, if he changed his

- 14 -

residence, he was required to register as a sex offender in that new jurisdiction.  Id.; see also, United States v. Ditomasso, — F. Supp. 2d ---, 2008 WL 1994866 at *3-4 (D.R.I., May 8, 2008)("Both the structure and purpose of [SORNA] show that Congress intended for sex offenders to register in their states regardless of whether a state has fully implemented SORNA.").

Minnesota Statutes Section 243.166, Subdivision 3(b), provides that, "at least five days before [a sex offender] starts living at a new primary address, including living in another state, the person shall give written notice of the new primary address to the assigned corrections agent or to the law enforcement authority with which the person currently is registered * * * [and] if the person will be living in a new state and that state has a registration requirement, the person shall also give written notice of the new address to the designated registration agency in the new state."  In addition, Section 243.166, Subdivision 3a, provides that, if a sex offender who is required to register lacks a permanent primary address, he is required to register with an appropriate law enforcement agency, in the jurisdiction where he is staying, within twenty-four (24) hours from the time when he ceases to have a primary address, and to report, in person, to a law enforcement agency on a weekly basis, for as long as he lacks a primary address.

The Defendant suggests that the Supreme Court's holding, in <u>Lambert v. California</u>, 355 U.S. 225 (1958), supports his claim, that an individual's Due Process rights are violated when he is prosecuted for "wholly passive" conduct, such as failing to register.  In <u>Lambert</u>, supra at 227, the Supreme Court struck down a city ordinance that required persons, who had been convicted of a felony, to register with the police within five (5) days after arriving in the city.  In finding that the ordinance violated the right to Due Process, the Supreme Court stated that the ordinance did not include an element of wilfulness, and provided for criminal charges based entirely on the passive presence of the individual within the city limits.  The Court held that, in order for the ordinance to be constitutional, it would have to require a showing of  "actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply."  <u>Id.</u> at 227-30.

In <u>United States v. Hutzell</u>, 217 F.3d 966, 968 (8th Cir. 2000), cert. denied, 532 U.S. 944 (2001), our Court of Appeals determined that <u>Lambert</u> "carves out a very limited exception to the general rule that ignorance of the law is no excuse," and emphasized that the holding of <u>Lambert</u> is that a prosecution is not a Due Process violation if the defendant's lack of awareness of the need to engage in statutorily mandated behavior, or to refrain from statutorily barred behavior, is objectively

- 16 -

unreasonable.  In a recent well-reasoned decision, <u>United States v. Craft</u>, 2008 WL 1882904 (D. Neb., April 23, 2008), the Court considered the applicability of <u>Lambert</u> to a defendant's claim, that the SORNA registration requirements violated his right to Due Process, and found that, although SORNA criminalizes the same "wholly passive" conduct of failing to register which also was at issue in <u>Lambert</u>, prosecutions pursuant to Section 2250(a) did not violate Due Process, as long as the sex offender had received prior notice that he was required to register as a State offender, was warned that failure to register would constitute a crime under State law, and had demonstrated his ability to comply with those State registration requirements.

Other Courts, which have considered the applicability of <u>Lambert</u> in the context of SORNA, have agreed, and have found that a convicted sex offender, who has been advised of his obligation to register as a sex offender under State law, has received sufficient notice to be subject to prosecution, without giving rise to a Due Process violation.[4]  See, <u>United States v. Glenn</u>, 2008 WL 2065919 at *2 (W.D. Ark., May 13,

---

[4]Although we have found two (2) Courts, which have held that prosecutions under SORNA have violated Due Process, in both cases the defendant failed to register prior to either the enactment of SORNA, or prior to the promulgation of the Attorney General's Interim Order, and therefore, they are distinguishable, as we determine later, in the text of this Opinion, that the Defendant's Ex Post Facto Clause claims are without merit.  See, <u>United States v. Barnes</u>, 2007 WL 2119895 (S.D.N.Y.,
(continued...)

CASE 0:08-cr-00170-MJD-RLE   Document 34   Filed 07/14/08   Page 18 of 44

2008); <u>United States v. Waybright</u>, --- F. Supp.2d ---, 2008 WL 2380946 at *16-17

(D. Mont., June 11, 2008); <u>United States v. Hinen</u>, 487 F. Supp.2d 747, 754 (W.D.

Va. 2007).

Finally, we understand the Defendant to argue that the Attorney General failed

to promulgate regulations that would make SORNA retroactive to persons who were

convicted before its implementation in a particular State, and that, since Minnesota

has not implemented SORNA, prosecuting him for violating its registration

requirements is a violation of Due Process.  Accordingly, the Defendant claims that,

as Minnesota has not yet implemented SORNA, he is unable to register in a way that

would satisfy the statutory requirements.

In <u>United States v. Utesch</u>, 2008 WL 656066 at *5 (E.D. Tenn., March 6, 2008),

the Court considered a sex offender's argument, that he was not required to register

under SORNA, as the Attorney General had not adopted a rule or regulation that

makes the Act retroactively applicable to persons who were convicted prior to

SORNA's implementation in a particular State.  However, as the Court explained, the

---

[4](...continued)
July 23, 2007); <u>United States v. Smith</u>, 2007 WL 1725329 (S.D.W.Va., June 13,
2007); see also, <u>United States v. Lovejoy</u>, 516 F. Supp.2d 1032, 1036 (D. N. Dak.
2007)(discussing cases); <u>United States v. LeTourneau</u>, 534 F. Supp. 2d 718, 723 (S.D.
Tex. 2008)(same).

- 18 -

Attorney General has, in fact, issued regulations "to interpret and implement" SORNA, as required by Title 42 U.S.C. §16912, by promulgating Title 28 C.F.R. §72, which "explicitly provided that SORNA applies to sex offenders convicted of any predicate offense before enactment of SORNA." Id.

Moreover, Title 42 U.S.C. §16913(d) instills the Attorney General with the authority to "specify the applicability of the requirements of this subsection to sex offenders convicted before July 27, 2006, or its implementation in a particular jurisdiction, and to prescribe rules for the registration of such sex offenders, and for other categories of sex offenders who are unable to comply with subsection (b) of this section," and Section 16913(b) provides guidelines for the initial registration of sex offenders. As a result, Section 16913(d) only applies to offenders who had not previously registered, prior to SORNA's promulgation.[5] See, United States v. Gould, 526 F. Supp.2d 538, 542-43 (D. Md. 2007); United States v. Ditomasso, supra at *5. Furthermore, SORNA requires that a sex offender "register, and keep the registration

_____

[5]Further, in May of 2007, the Attorney General issued Proposed Guidelines which specified that "the applicability of the SORNA requirements is not limited to sex offenders whose predicate sex offense convictions occur following a jurisdiction's implementation of a conforming registration program," but applies to all sex offenders, including those individuals whose convictions predate the implementation of SORNA. See, United States v. Utesch, 2008 WL 656066 at *5 (E.D. Tenn., March 6, 2008), citing 72 Fed. Reg. 30210, 30212.

- 19 -

current, in each jurisdiction where the offender resides, * * * is an employee, and * * * is a student," <u>Title 42 U.S.C. §16913(a)</u>, and Title 42 U.S.C. §16911(9) defines "sex offender registry" as "a registry of sex offenders, and a notification program, maintained by a jurisdiction."   Therefore, even without the promulgation of Guidelines by the Attorney General, a sex offender satisfies the SORNA registration requirements by meeting the registration requirement guidelines that have been established by each State, including Minnesota.

   As the Defendant has conceded, that he was advised of the requirement that he register as a sex offender in Minnesota, and that he did complete that initial registration, we are unable to find, as a matter of law, that it is violation of Due Process to prosecute him for failing to maintain that registration.[6]

---

[6]The Defendant also asserts, without explanation or citation, that "the prosecution is based on a statute that is void for vagueness," because he "'updated' his registration after he relocated to Nevada." <u>Defendant's Memorandum in Support</u>, supra at 10.  We are unable to ascertain any constitutional argument in this assertion, which relates either to SORNA, or to any Nevada statutes, as they may require sex offender registration.  Moreover, it appears that the Defendant has misapprehended the factual basis for the Government's assertion, that he had failed to register in Nevada.  A review of the Affidavit, which is attached to the Complaint, makes plain that the Defendant's registration was considered incomplete because a verification letter, which was sent to his Las Vegas address, was returned as undeliverable.  See, <u>Moran Aff.</u>, supra at ¶¶12-13.

C.    The Commerce Clause.    The Defendant next alleges that SORNA is unconstitutional, as Congress lacks the power to regulate the conduct in question, since the term "sex offender," as defined in SORNA, includes individuals whose offense has no relationship to interstate commerce.

In the watershed decision of United States v. Lopez, 514 U.S. 549 (1995), the Supreme Court held that Congress had exceeded its power, under the Commerce Clause, when it enacted the Gun Free School Zones Act of 1990.[7]    The Court identified three categories of activities which are within Congress' power to regulate, including "the use of the channels of interstate commerce;" "the instrumentalities of interstate commerce, or the persons or things in interstate commerce;" as well as those activities which have a "substantial relation to interstate commerce," which required a separate finding that the activity that Congress sought to regulate had a "substantial effect" on interstate commerce.    Id. at 558-59.   "Whether an activity is one that substantially affects interstate commerce is determined by focusing on four factors in particular:  (1) whether the regulated activity is economic in nature; (2) whether the

---

[7]The Act made it a Federal offense "'for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone.'"  See, United States v. Lopez, 514 U.S. 549, 550 (1995), quoting Title 18 U.S.C. §922(g)(1)(a)(1988 ed. Supp. V).

statute contains an express jurisdictional element which limits its application to activities with 'an explicit connection with or effect on interstate commerce;' (3) whether there are congressional findings about the regulated activity's effects on interstate commerce; and (4) whether the connection between the activity and a substantial effect on interstate commerce is attenuated." United States v. Mugan, 441 F.3d 622, 627-28 (8th Cir. 2006), cert. denied, --- U.S. ---, 127 S.Ct. 191 (2006), quoting United States v. Morrison, 529 U.S. 598, 610-13 (2000).  In Lopez, the Court determined that the Gun Free School Zones Act "neither regulate[d] a commercial activity nor contain[ed] a requirement that the possession be connected in any way to interstate commerce."  Id. at 551; see also, United States v. Morrison, supra; Jones v. United States, 529 U.S. 848 (2000).

As noted by the Government, every Court to consider the issue of the constitutionality of SORNA under the Commerce Clause -- with two (2) exceptions that we later address -- has found that it is a legitimate exercise of legislative power, under one or more prongs of the Lopez test.  See, United States v. Ditomasso, supra at *10 n. 8-9 (collecting cases).  Here, the Government argues that Section 2250(a) is constitutional pursuant to both the second, and the third prongs, of the Lopez test. See, United States v. Lopez, supra at 558-59.

As to the second prong of the <u>Lopez</u> test, the Government emphasizes that Courts have determined that Section 2250(a) is a valid exercise of legislative power under the Commerce Clause, as "[t]he express language of SORNA dictates that violations under SORNA, for failing to register, require either that the person is convicted of a violation of a federal law or, if otherwise required to register under SORNA, travel in interstate or foreign commerce." <u>Government's Memorandum in Opposition</u>, supra at 18, quoting <u>United States v. Elliott</u>, 2007 WL 4365599 at *3 (S.D. Fla., December 13, 2007); see also, <u>United States v. Thomas</u>, 534 F. Supp.2d 912, 918 (N.D. Iowa 2008)("Section 2250 falls squarely within the second Lopez category."); <u>United States v. Mason</u>, 510 F. Supp.2d 923, 932 (M.D. Fla. 2007) (holding that Section 2250(a) is facially constitutional "because it falls within the second category set forth in Lopez"). As explained by the Court, in <u>United States v. Gould</u>, supra at 547, "[u]nlike the statutes in Lopez and Morrison, Section 2250(a)(2)(B) focuses on the registration of persons in interstate travel," while the provisions of Section 2250(a)(1)(A) do not raise Commerce Clause concerns, as they require that the defendant have a previous conviction under Federal law. See also, <u>United States v. David</u>, 2008 WL 2045830 at *8 n. 11 (W.D.N.C., May 12, 2008).

- 23 -

The Defendant argues that we should follow the reasoning of the Court in

United States v. Powers, 544 F. Supp.2d 1331, 1336 (M.D. Fla. 2008), which found

that Section 2250(a)(2)(B) is not a constitutional exercise of the Commerce Clause,

since it applies to individuals who engaged in interstate travel for legitimate reasons

that are not connected with the crime of failing to register as a sex offender,  and such

lawful travel did not establish that a subsequent failure to register had a substantial

effect on interstate commerce.  Id. at 1335-36.  The position was rejected, however,

in a subsequent case from the same District, which found that only a minimal nexus

to interstate commerce is required when a statute is analyzed under the second prong

of the Lopez test, and that the crime of failing to register as a sex offender was

legitimately created to prevent such individuals from disappearing "off the radar

screen" by moving across boundary lines to a new jurisdiction, thereby establishing

an inherent link to interstate travel.  See, United States v. Mason, 2008 WL 1882255

at *3 (M.D. Fla., April 24, 2008); see also, United States v. Gillette, --- F. Supp.2d ---,

2008 WL 943265 at *5 (D. Virgin Islands, April 7, 2008)(noting that the fact sheet,

which was disseminated in conjunction with SORNA, emphasized that "[t]he bill will

integrate the information in State sex offender registry systems and ensure that law

enforcement has access to the same information across the United States, helping

prevent sex offenders from evading detection by moving from State to State."),
quoting <u>Fact Sheet: The Adam Walsh Child Protection and Safety Act of 2006</u>, 2006
U.S.C.C.A.N.  S35, *S36 (2006).

The Government argues that Section 2250(a) also satisfies the third prong of
the <u>Lopez</u> test, which authorizes Congress to regulate activities that substantially
affect interstate commerce.  The Defendant disagrees, and argues that the failure of
sex offenders to register is not an economic endeavor that has a substantial effect on
interstate commerce, and that Congress failed to include any findings which would
support the validity of the Act under the Commerce Clause.  However, in the Supreme
Court's most recent decision on the Commerce Clause, <u>Gonzales v. Raich</u>, 545 U.S.
1, 21 (2005), the Court considered the third prong of the <u>Lopez</u> test, and noted that,
"[w]hile congressional findings are certainly helpful in reviewing the substance of a
congressional statutory scheme, particularly when the connection to commerce is not
self-evident, and while we will consider congressional findings in our analysis when
they are available, the absence of particularized findings does not call into question
Congress' authority to legislate."

Moreover, several Courts have considered SORNA, under the third <u>Lopez</u>
prong, and have found that it was a constitutional exercise of Congressional power.

See, United States v. Holt, supra at *3; United States v. Utesch, supra at *14; United States v. Hacker, 2008 WL 312689 at *2 (D. Neb., February 1, 2008); United States v. Dixon, 2007 WL 4553720 at *5 (N.D. Ind., December 18, 2007).   As the Supreme Court has noted, there is a presumption that SORNA constitutes a legitimate exercise of Congressional power, with the burden on the defendant to make "a plain showing that Congress has exceeded its constitutional bounds," United States v. Morrison, supra at 607, and to support the Act, the Government need only establish a rational basis to conclude that the targeted activity substantially affects interstate commerce. See, Gonzales v. Raich, supra at 17.

In United States v. Hacker, supra at *2, the Court found that the purposes of tracking sex offenders, as they move from one jurisdiction to another, and of creating a comprehensive national database of those offenders, constituted a rational basis to conclude that the failure to register in a local jurisdiction substantially affected interstate commerce.  See also, United States v. Ditomasso, supra at *3 ("SORNA, including the criminal component, prevents sex offenders from being lost in the cracks **between** state regulations, a matter which is beyond the power of any one state to comprehensively address.")[emphasis added]; United States v. Howell, 2008 WL 313200 at *8 (N.D. Iowa, February 1, 2008); cf., United States v. Hinen, supra at 757-

- 26 -

58 ("Where a jurisdictional predicate is present in a statute, as is the case here, the 'substantially affects' prong is inapplicable," and the Government need only make a minimal showing of an effect on interstate commerce); <u>United States v. Thomas</u>, supra at 920 (analyzing SORNA under only the second <u>Lopez</u> prong).

The Defendant also argues that, even if Section 2250(a) is constitutional, we should dismiss the Indictment, as a violation of Section 2250(a) requires a demonstration, by the Government, that he violated Section 16913, and that provision constitutes an impermissible exercise of Congressional power. Although the same argument has been raised, repeatedly, by defendants across the country, only one Court has agreed with the argument, and has held that Section 16913 is unconstitutional. In <u>United States v. Waybright</u>, supra at *5, the Court held that Section 2250(a) was constitutional under both the first and second prongs of the <u>Lopez</u> test, as it "requires sex offenders to use the channels of interstate commerce or travel in interstate commerce before subjecting them to criminal penalties." However, the Court then turned to Section 16913, and found that the provision could only be analyzed under the third <u>Lopez</u> prong and, ultimately, failed that test, as SORNA, assertedly, has nothing to do with commerce or economic enterprise, and has no

express jurisdictional hook that would "limit its reach to sex offenders connected with or affecting interstate commerce." Id. at *8.

In United States v. Pitts, 2007 WL 3353423 at *4 (M.D. La., November 7, 2007), reconsideration denied, 2008 WL 474244 (M.D. La., February 14, 2008), the Court noted that Section 16913 did indirectly affect individuals who were convicted under State law, and who did not travel in interstate commerce, as Congress included financial incentives to encourage States to enact their own punitive measures for sex offenders who failed to register. As a result, the Court determined that this finding supported the Government's claim that SORNA is constitutional, as it highlighted Congressional awareness that the limits of the Commerce Clause prevented SORNA's registration requirements from applying to sex offenders, who were convicted under State law, unless they also traveled in interstate commerce, which prompted the decision to provide incentives for States to pass cooperative legislation. Id.; see also, United States v. Cardenas, 2007 WL 4245913 at *12 (S.D. Fla., November 29, 2007).

"As a result, the only registration requirements imposed on offenders who do not travel in interstate commerce are those required by state law." Id. In fact, Section 16913 does not provide for any criminal prosecution of individual sex offenders, but only establishes that States should establish a criminal penalty for failing to comply

with the registration requirements.  See, Title 42 U.S.C. §16913(e)("Each jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this subchapter.").  However, to date, no State has enacted SORNA, see, United States v. Waybright, supra at *12, and therefore, the present Indictment alleges that the Defendant should be subject to criminal prosecution, for traveling in interstate commerce.  The Defendant is charged with violating Section 2250(a), not Section 16913, and we find nothing in that prosecution that exceeds the Congressional power under the Commerce Clause.

D.    The Delegation of Power to the Attorney General.  The Defendant next argues that Congress impermissibly delegated power to the Attorney General, by which to determine if SORNA applies retroactively to persons who were convicted prior to its enactment on July 27, 2006, and that the Regulations, which were promulgated by the Attorney General, violate the Administrative Procedures Act.

Title 42 U.S.C. §16913(d) provides as follows:

> The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for

- 29 -

other categories of sex offenders who are unable to comply
with subsection (b) of this section.

Section 16913(b) provides that a sex offender is required to initially register, either

before completing a sentence of imprisonment, or not later than three (3) business

days after being sentenced for that offense, if he is not required to serve a prison

sentence.  See, Title 42 U.S.C. §16913(b).

"Congress may not constitutionally delegate its legislative power to another

branch of Government."  Touby v. United States, 500 U.S. 160, 165 (1991); see also,

United States v. Garfinkel, 29 F.3d 451, 457 (8th Cir. 1994).  However, Congress may

obtain assistance from other branches and, "[i]n determining what [Congress] may do

when seeking assistance from another branch, the extent and character of that

assistance must be fixed according to common sense and the inherent necessities of

the government coordination."  United States v. Mistretta, 488 U.S. 361, 371-72

(1989).  As a result, "[s]o long as Congress 'shall lay down by legislative act an

intelligible principle to which the person or body authorized to [exercise the delegated

authority] is to conform, such legislative action is not a forbidden delegation of

legislative power."[8]  Id. at 372.

_____

[8]The Supreme Court has only stricken two (2) statutes as being in violation of
(continued...)

According to the Defendant, in enacting SORNA, Congress impermissibly gave the Executive Branch, through the office of the Attorney General, the power to expose individuals to criminal liability.   However, according to our research, the argument that Congress unlawfully delegated its power in SORNA has been rejected by every Court that has considered it.  See, e.g., United States v. Howell, supra at *7 (collecting cases).  In United States v. Howell, supra at *7, the Court found that the authority, which was granted to the Attorney General in Section 16913(d), "is circumscribed to a prescribed set of circumstances" that relate to the retroactive applicability of the registration requirements set out in SORNA.  See also, United States v. Hacker, supra at *3; United States v. Samuels, 2008 WL 169792 at *8 (E.D. Ky., January 17, 2008); United States v. May, 2007 WL 2790388 at *6 (S.D. Iowa, September 24, 2007).

Under the circumstances, here, the only Congressional delegation at issue is that relating to the authority to issue a rule that covers a narrow circumstance -- when a person, who is required to register under SORNA, is unable to register in a jurisdiction

---

[8](...continued)
the non-delegation doctrine, and both of those instances occurred in 1935.  See, A.L.A. Schechter Poultry Corp. v. United States, 295 U.S. 495 (1935) and Panama Refining Co. v. Ryan, 293 U.S. 388 (1935); see also, Whitman v. Am. Trucking Ass'n, 531 U.S. 457, 474 (2001)(noting this limited application of the non-delegation doctrine).

where he lives, works, or is a student -- and the "delegation of such authority is not

so broad as to be violative of the non-delegation doctrine." United States v. Hinen,

supra at 751.  Congress has clearly set forth the purpose of SORNA, and the fact that

Congress delegated to the Attorney General the authority to determine the

applicability of the Act's registration requirements, before it was implemented in

certain jurisdictions, or granted, to the Attorney General, the power to promulgate

regulations as to certain individuals who would otherwise fall outside of the regulatory

language, is only a gap-filling measure, and does not improperly delegate, to the

Executive Branch, the authority to decide if SORNA applies retroactively.  See,

United States v. Mason, supra, 510 F. Supp.2d at 928.

The Defendant also argues that the Attorney General's Interim Order, which

was codified at Title 28 C.F.R. §72.3, and which provides that "[t]he requirements of

[SORNA] apply to all sex offenders, including sex offenders convicted of the offense

for which registration is required prior to enactment of that Act," was issued in

violation of the Administrative Procedures Act ("APA"), see, Title 5 U.S.C. §553, as

it was promulgated without a thirty (30) day notice and comment period.  The

Defendant acknowledges that Section 553 permits agencies to enact rules, without a

notice and comment period, for "good cause," where such a delay would be

"impractical, unnecessary, or contrary to the public interest." <u>Title 5 U.S.C.</u> <u>§553(b)(B)</u>.  However, he argues that the "good cause" exception is narrowly construed, and "its use should be limited to emergency situations." <u>Defendant's</u> <u>Memorandum</u>, supra at 15 n. 3; see also, <u>Utility Solid Waste Activities Group v.</u> <u>Environmental Protection Agency</u>, 236 F.3d 749, 754 (D.C. Cir. 2001).

The Government counters that the Attorney General's Interim Order "specified that the rule would become immediately effective because prior public notice would be contrary to the public interest." <u>United States v. Gould</u>, supra at 546. As explained by the Court, in <u>United States v. Pitts</u>, supra at *8, the Interim Order includes findings, by the Department of Justice, which state as follows:

> Delay in the implementation of this rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders who fail to register through prosecution and the imposition of criminal sanctions. The resulting practical dangers include the commission of additional sex assaults and child sex abuse or exploitation offenses by sex offenders that could have been prevented had local authorities and the community been aware of their presence, in addition to great difficulty in apprehending perpetrators who have not been registered and tracked as provided by SORNA.  This would thwart the legislative objective of 'protect[ing] the public from sex offenders and offenders against children' by establishing a comprehensive national system for the registration of those offenders,' * *

- 33 -

> \* because a substantial class of sex offenders could evade the Act's registration requirements and enforcement mechanisms during the pendency of a proposed rule and delay the effectiveness of a final rule.

The Interim Order concludes that "[i]t would be contrary to the public interest to adopt this rule with a prior notice and comment period * * * or with the delayed effective date normally required."  Id., citing 72 Fed. Reg. 8894, 8896-97 (2007).

We agree with every other Court, which has considered the issue, that the Attorney General has demonstrated that it would be in the public interest to ensure the speedy implementation of the regulations, which relate to the registration requirements of SORNA, and that demonstration satisfied the good cause necessary to waive the notice and comment period.[9]

E.   The Defendant's Right to Travel.   The Defendant next argues that SORNA presents an unconstitutional burden on his right to travel.  According to the Defendant, the registration requirements, which SORNA imposes on sex offenders, renders compliance unreasonably burdensome, as it criminalizes the failure to register

---

[9]We do note that the proposed guidelines, which were issued by the Department of Justice, were open to the formal public notice and comment period.  See, United States v. Gould, 526 F. Supp.2d 538, 546 (D. Md. 2007).

within three (3) days of any change in address, and since it requires the sex offender to appear in person when updating a registration.

Although the word "travel" is not contained in the Constitution, "[t]he 'constitutional right to travel from one State to another' is firmly embedded in our jurisprudence." Saenz v. Roe, 526 U.S. 489, 498 (1999). The right to travel "protects the right of a citizen to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State." Id. at 500; see also, Doe v. Miller, 405 F.3d 700, 713 (8th Cir. 2005), cert. denied, 546 U.S. 1034 (2005). In Weems v. Little Rock Police Department, 453 F.3d 1010, 1016-17 (8th Cir. 2006), cert. denied, --- U.S. ---, 127 S.Ct. 2128 (2007), quoting Doe v. Miller, supra at 713, our Court of Appeals rejected a right to travel challenge to a State sex offender registration statute, and found that the statute did not "prevent a sex offender from entering or leaving any part of the State" or "erect any actual barrier to interstate movement."

Like the State statute challenged in Weems, SORNA does not prevent sex offenders from traveling, but merely requires them to notify law enforcement officials when they do, and it imposes the same registration requirements on individuals who

are first moving to a State, as it does on long-time residents.  See, <u>United States v.</u> <u>Waybright</u>, supra at *13.  Moreover, the Courts, which have considered SORNA in this context, have concluded that it does not constitute an unlawful burden on the right to travel.[10]  See, <u>United States v. Ambert</u>, supra at *4, citing <u>Doe v. Moore</u>, 410 F.3d 1337, 1349 (11th Cir. 2006); <u>United States v. Gonzalez</u>, 2007 WL 2298004 at *8 (N.D. Fla., August 9, 2007).  Accordingly, we reject the Defendant's argument that his right to travel has been unlawfully burdened.

     F.    <u>The Ex Post Facto Clause</u>.  The Defendant also argues that the crime, which is alleged in the Indictment, purports to punish him for acts that were committed prior to the passage of SORNA, thereby constituting a violation of the Ex Post Facto Clause.

     The Ex Post Facto Clause is violated when a statute is enacted that criminalizes an act that was innocent when originally performed, that increases the punishment for

---

[10]Although <u>United States v. Ambert</u>, 2007 WL 2949476 at *3 (N.D. Fla., October 10, 2007), and <u>United States v. Gonzalez</u>, 2007 WL 2298004 at *8 (N.D. Fla., August 9, 2007), both rely on a decision by the United States Court of Appeals for the Eleventh Circuit, <u>Doe v. Moore</u>, 410 F.3d 1337, 1349 (11th Cir. 2006), we note that <u>Moore</u> ultimately drew its authority from <u>Saenz v. Roe</u>, 526 U.S. 489, 499-500 (1999), which is the same controlling authority that was cited by our Court of Appeals when addressing this same issue.  See, <u>Weems v. Little Rock Police Department</u>, 453 F.3d 1010, 1016-17 (8th Cir. 2006)

a crime beyond that which would have been imposed at the time of the criminal act, or that removes a defense which would have been available according to the laws that were in force at the time that the act was committed.   See, Collins v. Youngblood, 497 U.S. 37, 42 (1990), citing Beazell v. Ohio, 269 U.S. 167, 169-70 (1925).  As a consequence, the Ex Post Facto Clause applies "to penal statutes which disadvantage the offender affected by them."  Id. at 41; see also, Weaver v. Graham, 450 U.S. 24, 29-30 (1981)("[T]wo critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it."); Snodgrass v. Robinson, 512 F.3d 999, 1002 (8th Cir. 2008)("The changed law must create a 'significant risk' of increasing the offender's punishment."), quoting Garner v. Jones, 529 U.S. 244, 255 (2000).  However, "procedural" changes, which may work to the disadvantage of the accused, by altering the procedures by which the crime is adjudicated, but which do not change the substantive law, are not Ex Post Facto violations.  Id. at 45.

   To determine if a statute is barred by the Ex Post Facto Clause, the Court must ask whether the "legislature's intention was to enact a regulatory scheme that is civil and non-punitive."  Smith v. Doe, 538 U.S. 84, 92 (2003).  The Supreme Court has

noted that, if "the intention of the legislature was to enact a regulatory scheme that is civil and non-punitive, [the Court] must further examine whether the statutory scheme is 'so punitive in purpose or effect as to negate [Congress's] intention' to deem it 'civil.'" Id., quoting Kansas v. Hendricks, 521 U.S. 346, 361 (1997). To make that determination, the Court "ordinarily defer[s] to the legislature's stated intent," and "'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." Id., quoting Kansas v. Hendricks, supra at 361 and Hudson v. United States, 522 U.S. 93, 100 (1997).

The Government argues that the Defendant's Ex Post Facto claim fails, as the Indictment charges him with failing to register, and to update his sex offender registration, between September 14, 2007, and April 15, 2008, and that the violation took place after SORNA was enacted on July 27, 2006, and after the promulgation on February 28, 2007, of the Interim Order by the Attorney General, which made SORNA applicable to individuals whose underlying sex offenses predate SORNA.

The majority of the Courts, which have examined similar claims, have found that, based on the holding of the Supreme Court, in Smith v. Doe, supra, SORNA is not an Ex Post Facto law. See, e.g., United States v. Glenn, supra at *1 (collecting cases). In Smith v. Doe, supra at 89, the Supreme Court was asked to examine the

- 38 -

constitutionality of an Alaskan sex offender registration law, which applied retroactively to offenders who were convicted prior to the passage of that law. The Court began its analysis by examining the language used by the legislature, and then determined that the clear legislative intent was to protect public safety, and that "an imposition of restrictive measures on sex offenders adjudged to be dangerous is 'a legitimate nonpunitive governmental objective and has been historically so regarded.'" Id. at 93, quoting Kansas v. Hendricks, supra at 363.

The Court further noted that, although the notification provisions of the State law were codified in the State's "Health, Safety, and Housing" code, the registration requirements were included in the criminal procedure code, but the Court found that "[t]he location and labels of a statutory provision do not by themselves transform a civil remedy into a criminal one," as both civil and criminal sanctions could properly be labeled "penalties." Id. at 94-95. In addition, the State law did not subject offenders to any type of restraint, other than the registration requirement, which only created a central database for information that was already a matter of public record. Id. at 100-01. Finally, the Supreme Court rejected the argument that the State registration law was punitive, merely because it applied to all offenders regardless of their future dangerousness, and noted that it had previously approved the "universal

application" of such legislation on classes of criminals, without requiring an individualized determination of their dangerousness.  Id. at 104, citing De Veau v. Braisted, 363 U.S. 144, 160 (1960), and Hawker v. People of New York, 170 U.S. 189, 197 (1898).

Moreover, we find no merit to the argument that, even if the Act was intended to be civil and non-punitive, SORNA's actual statutory scheme is so punitive that it violates the Ex Post Facto Clause.  In United States v. Cardenas, supra at *11, the Court considered, and rejected, a substantively identical argument, and determined that both the plain language of SORNA, and its legislative history, supported a finding of Congressional intent to enact a nonpunitive regulatory scheme.  As explained by the Court in Cardenas, the stated purpose of SORNA is "'to protect the public from sex offenders and offenders against children' and to establish 'a comprehensive national system for the registration of those offenders.'"  Id., quoting Title 42 U.S.C. §16901.  Moreover, like the State law in Doe v. Smith, SORNA is entirely codified in Title 42, which governs Public Health and Welfare, with the only exception being the new Federal failure to register crime, which is codified in Title 18, and, as we have previously detailed, the Supreme Court has held that such classifications are not dispositive.

- 40 -

Similarly, the Court, in United States v. Hinen, supra at 755-56, reasoned that, "implicit in the legislative history of [SORNA] is Congress's concern that sex offenders who evaded registration requirements by crossing state lines were a threat to public safety," and that the Congressional intent was to insure that sex offenders complied with the civil registration legislation, which existed in every State at the time of SORNA's passage. The Hinen Court also considered the argument, that the effects of the sex offender registration requirements in SORNA transformed it into a punitive statute, despite the Congressional intent, and relied on the exhaustive analysis in Smith v. Doe to reject that argument.[11]   Id. at 756-57; see also, United States v. Mason, supra, 510 F. Supp.2d at 930 (finding that the SORNA provision which requires a sex offender to provide detailed personal information and a photograph did not alter the statute's nonpunitive nature).

Here, SORNA has not criminalized a sex offense that took place prior to its enactment, but rather, has imposed registration requirements on the Defendant, and

---

[11]The Court, in United States v. Hinen, 487 F. Supp.2d 747, 757 n. 8 (W.D. Va. 2007), concluded that SORNA differs from the State law, which was analyzed by the Supreme Court in Smith v. Doe, 538 U.S. 84 (2003), in that it requires sex offenders to make periodic appearances in order to provide updated photographs, and registration information, and found that those additional requirements were not sufficient to transform SORNA into a punitive statute. See also, United States v. Templeton, 2007 WL 445481 at *5 n. 5 (W.D. Okla., February 7, 2007).

all others similarly situated, which became retroactively effective by the Attorney General's Interim Order, and the Defendant is charged with violating those requirements after both SORNA was enacted, and the Interim Order was promulgated. As a result, this case is distinguishable from those cases in which Courts have found that the Ex Post Facto Clause was violated, and that are limited to circumstances in which the offender failed to register after the passage of SORNA, but prior to the date of the Interim Order.  See, e.g., United States v. Gillette, supra at *8 (finding that SORNA was ex post facto as to the defendant whose failure to register as a sex offender predated both the passage of SORNA, and the promulgation of the Interim Order); United States v. Aldrich, 2008 WL 427483 at *5 (D. Neb., February 14, 2008); United States v. Kent, 2008 WL 360624 at *10 (S.D. Ala., February 8, 2008); United States v. Muzio, 2007 WL 2159462 at *5 (E.D. Mo., July 26, 2007)(holding that SORNA "is only unconstitutional when applied to those previously-convicted persons who traveled before the Attorney General's Rule").  For these reasons, we find that SORNA is not ex post facto as to the Defendant.

In sum, having considered, and rejected, the Defendant's constitutional claims, we recommend that his Motion to Dismiss his Indictment be denied.

NOW, THEREFORE, It  is --

- 42 -

RECOMMENDED:

That the Defendant's Motion to Dismiss Indictment [Docket No. 27] be denied.

Dated:  July 14, 2008                        s/Raymond L. Erickson
                                             Raymond L. Erickson
                                             CHIEF U.S. MAGISTRATE JUDGE

## NOTICE

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than July 31, 2008**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than July 31, 2008**, unless all interested parties

- 43 -

stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the

transcript in order to resolve all of the objections made.